Our next case is U.S. v. John Lewis, got a little ahead of myself, Mr. Hillis. Good morning, may it please the court, counsel. My name is Daniel Hillis, I'm with the Federal Public Defender's Office and I represent Mr. Lewis who raises two concerns about the Thompson-Ayer and the second is an assertion about the Rule 32.2 criminal forfeiture order. We believe that the sentence that was imposed in this case is infirm as a result of the Thompson-Ayer and that the forfeiture order is invalid because of the Rule 32.2 error which does not appear as the government has contested in its brief, rather it has alleged that it is moot. Our position on that is that so long as the judgment is in effect, the judgment is valid, the issue is not moot, even if the property is to be returned, which we appreciate the government's efforts to do so and we hope that that will happen, but I'd like my client to get his $196, whatever property be returned to his family, and that hasn't happened yet, has not happened, Your Honor. And how much was that? It was $196 and there were various items, I'm not sure of the worth, they're listed in the government's brief. It was impossible for me to determine from the property there was. It wasn't until the government's brief was filed that I was able to see in the footnote in the government's brief what it was. So now I understand what it is and if the order is vacated, my client can file the Rule 41 order for the return of property. Money can be put on his books in prison, the $196 and so forth. So while the government says it's de minimis, fact remains that the procedure was improper, the order therefore is improper. Was there any objection made at the time about that procedure? No, there was not. So I thought counsel agreed not to submit the forfeiture issue to the jury, right? That's represented in the brief as a matter that happened off-record, so I can't comment on that. I wasn't trial counsel. I can say what's in the record is a deficient Rule 32.2 proceeding. There's not the bifurcation that was necessary to submit the issue to the jury or to inquire on the record whether my client waived. That did not happen. So turning then, unless of course further questions on the Rule 32.2 issue to the Thompson heirs, we are fully aware that my client has a 421 sentence, which is the mandatory minimum that could be imposed in this case. My client, his life expectancy is 84 years old. He was sentenced when he was 66. So he went to trial knowing that he would not see the light of day and breathe free air again once he was convicted on this case. The government made a decision, and they're within the rights to do so as a matter of prosecutorial discretion what charges to charge. My client recognized the risk. He has gone to trial. He lost. I don't think that was a surprise. He has now though been sentenced, and there is a Thompson heir. Will he likely get higher sentence? He may. It may not matter. He will be dead. He has a life expectancy of poor health. He has a heart condition, but nevertheless conditions are improper, and he is entitled to a resentencing, and so we assert the Thompson heir. Is he in some sort of special place for medical reasons? Last I understood, he is not in a medical facility. But he's in pretty poor health even now. Very poor health. Very overweight and heart and everything else. The Social Security is very simplistic actuarial formula may suggest he'll live to be 84. I think if you take a more sophisticated program like the University of Pennsylvania's calculator that's available online, his life expectancy is probably considerably less than 84, maybe by decades. And then you had suggested that if we do agree to vacate and remand, that it be a procedure whereby he waives his Because I just wondered wherever he is, because we've been doing more video conferencing at the district court level, would that be an option? I think that it is. I recognize this court's decision in another Thompson case, and that was a revocation of supervised release, and it talked in some respect about the due process right of an individual to be present. But the Second Circuit has an interesting case, and I believe it's United States v. Salem or Saleem, and if there is an effective waiver, and there would be reason to do that with poor health and to be pulled out of programs and the transit difficulties, he can do that. It just should be something that's done on the record so we don't come up on it. Right, because I know, and clearly the waiver process can be used on the record and all, but I'm just, I was just posing whether or not a video conference would also be another way to do it. Speaking of waiver, however, I would think district judges would be very gun-shy in this area about relying on any explicit waivers at this point, such as what we've got here, Mr. Hillis, page 24 of the sentencing transcript. Counsel, do you have any legal objection to the sentence I have proposed or request any further elaboration of my reasons under section 3553A, both as to the term of imprisonment or the conditions of the waiver be any more explicit? I think there's a problem and it happens three pages before the page Your Honor referenced. So on page 21 of the appendix, excuse me, the sentencing. Are there any objections to those standard conditions, Mr. McKinley? No, Your Honor. Appendix 21, so page 20 of the sentencing transcript, it says, I quote, to promote respect for the law, etc., the court, the defendant, shall also comply with the standard conditions of supervision. There's no doubt the conditions have then been imposed. We don't require that somebody take exception, under Shannon. What do you make, though, then of the, I mean, the judge here did what she's supposed to do, and that is, here's what I think I'm going to do, invites objections to the four. My point is, on page 21 of the appendix, it appears to me fair reading is the conditions have already been imposed, and then the judge... Let me put it this way. Does your argument to avoid waiver depend upon that reading? It would be very important to my argument. Does it depend upon it? Do you have anything else? Yes, I would say that the problem would still be a matter of, did the district court properly consider and make the necessary findings for the conditions, because we've got vague and overbroad conditions that would raise constitutional issues. To which no objection was made. Yes. Let's talk about a couple of those, if we could. Can I interject with one thing, Your Honor? Sure. This is, of course, a sentencing that occurred in November of 2014, well before Thompson, in those cases, would have alerted defense counsel or defendants to make these types of objections. Once upon a time, we wouldn't think that we could make those types of objections, and it wasn't until later that that would have happened. And so, there is that chronology that would be important here. I would have thought these arguments were circulating widely among federal defenders in this circuit. They were well known, they're based, if it's so, the law is so clear-cut, it was all based on statutes, right? And yet, for 30 years, district courts weren't making those determinations, so I would disagree. Nobody was asking them to make those determinations. Well, I don't think that it's... Well, let's go to the specifics. One of the things you're objecting to is a lack of detail about the Internet Monitoring Program order, right? Yes. How useful do you think it would be in 2014 to spell out the details of an Internet Monitoring Program that would take effect in approximately 2045? And I'd ask you to take yourself back to the year of 1985 and predict what we would want to impose today. I take your point, Your Honor, and I would say this. So, what's the point of remanding on that? To make certain that we have, similar to the case that preceded mine by two now, the right procedures in place. Those protect substantive rights. I understand Your Honor's point, but I would say this. Why have anything other than five years of supervised release for somebody who is going to be dead anyway? Why have anything other than the mandatory conditions? We should go to the basics, not to the things that are beyond that. That's as a matter of the parsimony principle 3553A anyway. Well, the whole premise of this discussion requires us to indulge in this rather wild counterfactual speculation. Well, the obvious problem in this case, this is not a very good test case, obviously. And I think when they say there's no objection, they recognize that this guy is not going to get to 94 years old, and may not even get to 70. So, maybe we look at this in the abstract and say, you know what, and I know we've got some other things going on, so we'll be addressing these things for cases perhaps other than just this one. I understand the practical aspects of what's happening here. I can only focus on the procedures. Do you agree, Mr. Hillis, that all of these conditions of supervised release, let's imagine, you know, suppose Mr. Lewis were healthy and 25. All of these issues about the details can be addressed at the time supervised release starts, because conditions can be modified at the request of either party. Yes. Wouldn't that be a more sensible time to address these sorts of issues? Once the issues are in place, my client, they're ripe. My client has a lawyer. When the conditions have not been imposed, unless they are to be made more burdensome, he wouldn't have a right to counsel at that subsequent proceeding. And so, therefore, the time is now, much as we may hate it. So, my point would be, again, as a practical matter, impose fewer conditions and shorter periods of supervised release at the beginning, and then when the modification is necessary and follow the best practices of Siegel, impose conditions then when somebody is represented by a counsel would do much to avoid these types of appeals. Unless the court has further questions of me. All right. Thank you. Thank you. Mr. DeBroda? May it please the Court? Counsel, the government sees this case very differently. We don't think it's really one that should be thought of about Thompson waivers, Thompson errors. It should be what I'm going to call a Lewis waiver. This court has, in the last year or so, laid out procedures that you want district courts to follow to have coherency in how we come up with standard and special conditions of supervised release. If you take the procedures that the district court followed here, the waiver, we think, is quite clear. And that's where this case should stop. What happened in this case was the case law starts accumulating in the district court, and what happens here is the written into it. It was produced well before the sentencing hearing. It was even an extension of that. And the parties had read all of those. No written objections were filed by either side. The terms here weren't a question of negotiation. They were accepted by both parties as workable as applied to this case. Then we have the hearing. So the waiver doesn't start in the hearing on page 20. The waiver starts weeks before the hearing when we have these That's what this court has said it wants district judges to do, and this judge did that. This is also not a situation where the standard court order in the district is driving the equation. We have this stuff in the pre-sentence investigative report. Now, the defense counsel in this case was in no way deficient. Mr. McKinley is a very experienced former federal public defender. He actually has more experience than I have. We've done many, many, many cases together. He completely understands these issues. His tactical point in this hearing was to prevent what the government asked for, which was a life sentence. So I would suggest tactically the last thing in the world he wanted to do was talk about conditions of supervised release when he was hoping for a 45-year sentence instead of the life sentence we requested. So this is not a time he wanted to talk about monitoring that would take effect in 2045. When you look at what happens on page 20, we've had the government make an entire argument at length on all of the things about Mr. Lewis that showed he was at great risk of supervision. He commits this crime while on supervision. He did it secretly using child pornography that he'd kept secret from his probation officer in Ohio. He was a registered sex offender. He rents a car. He drives to Indiana to pick up a kid to have sex with and to film the kid and so forth. He testified at trial that he had a 50-year pattern of being sexually attracted to minors. At one point he was talking about predisposition. He said, I am predisposed to commit this crime. Okay, that's what the district court had in front at the time this hearing starts. On page 20, it's very clear the court has not given the final sentence. Judge Hamilton is correct. That occurs much later in the proceeding and that's quite standard in our district. So by the time the sentence is pronounced, there were two clear opportunities for the defense to ask for more reasoning under Thompson, that's the procedural component, or to given it an objection. And when we're talking about elaborating specific conditions of supervised release, if the defendant and his counsel don't think that they're vague, I don't think this court should dive in for a person that's very unlikely to ever serve any of these conditions of supervised release. Mr. DeBroda, I would just want to note that the entire, as near as I can tell, in the has effectively rolled over in all of them until this one and has acceded to remands. And in this one, I will say I am glad to have an adversarial presentation of the waiver issues and reminders, for example, about the approach we take to waiver and plain error with other issues, including sentencing issues such as the length of a prison term. That's right, your honor. In fact, I would suggest supervised release conditions are important, but the length of a prison term is a substantially more significant issue. And if you look at U.S. versus Gines, another district judge, a different one in our district, was explaining why he gave Mr. Gines a 59-year sentence and asked at some point in that proceeding, do you need more elaboration of your principal argument and mitigation? And the defense said no, and this court found that to be a waiver. The job that Judge Stinson did in this particular case in explaining her sentence is very detailed, and it includes very significantly on page 21 adoption as articulated by the government of the government's argument. That's on page 21 at the top. I recognize the unlikelihood that these conditions will ever be imposed. However, to the extent Mr. Lewis defies the odds, strict supervision is necessary because of his, as articulated by the government, refusal to cooperate with conditions of probation in earlier cases. So you put all that together, he is a terrible test case for defendants to have these conditions be discussed because he is uniquely, perhaps undeterrable, as the court found in stating in the record, he needs to effectively get a life sentence because he's never going to get better. So let me suggest what a Lewis waiver, if I can call it that, would look like. First, if the special or standard conditions of supervised release are disclosed in the pre-sentence report as they actually are not changed, with adequate time for written responses and there are none, if at the time of the hearing the sentence is proposed and objections are requested or further elaborations are requested and both are answered in the negative, we have that here. If there's no indication of deficiency by counsel in terms of their representation throughout the case or in doing zealous and appropriate advocacy and we get to a point where why does it matter that the judge asks do you have any legal objections so that Judge Stinson gets an opportunity to fix something if it's an error and fixable. Here she's told you don't need to do that twice and when you invite further elaboration and you don't get it, we cut off the opportunity to go on at great lengths to see if these conditions might be justified. When you have all those direct answers, this is a waiver and that should be the end of it. That provides us with a bright line procedure district courts can follow that can make its way into a bench book and we all know what's supposed to happen in the case. To the extent that that doesn't work, this court should explain what further steps should be taken. One possibility is to have in the pre-sentence reports not just the standard conditions or special conditions but also the rationale in the PSR as well. I've seen some pre-sentence reports have that. I don't like that practice. For one, I could justify for days in some cases some of these provisions that this court has not had an opportunity to hear about because these cases are all planned. Because if that was the case then everybody might get locked into what the Some cases too, these reasons may be in the portion of the PSR we don't see. I don't know. But I know right now it's difficult to be a prosecutor in trying to do one of these cases without really knowing what we're supposed to do and make sure it happens. So I think there has to be a waiver track. It has to be well understood and laid out and cases should address that if possible. So that's our primary argument here. But your position is also not, I think, so high that we'll never get to supervised release. No. That you should just automatically say all those conditions apply. I mean there needs to be some analysis of each of those conditions based particularly on our latest case law. It really should be a step-by-step analysis of each condition to see what applies and doesn't apply. No, absolutely. Like in this case we thought very hard about just agreeing to a remand. So let me address why we did not. We think the waiver argument is very important and needs to be something this court explains one way or the other. We can see waiver in some cases. We see it in Gines. We see other cases where it wasn't an issue or wasn't advanced by the government on the facts of that case. But because this sentence was, sentencing was done relatively recently, it was done at least on our part. We were waiting for Mr. McKinley to state whether he was going to object or not. Had he objected we would have put on testimony on a lot of these conditions. We didn't. That's one of the reasons I, in that hearing, I made sure those questions got asked but I didn't have to say anything because the judge did them before I needed to. Okay. We've said in the past that the government and defense should be proactive on making sure as the court proceeds if there are any objections, if there's anybody that wants to say anything further because it saves a lot of time and effort. Right. In addition to ensuring the defendant's rights. Oh absolutely. And particularly if there is a real victim in these kinds of cases the prospect, and there have been, resentencings where, for example, young children victimized in such cases have had to be re-traumatized by going through fresh sentencing hearings to clarify the terms of supervised release long into the future. Can I address that point just briefly, Your Honor? That's actually a factor in this case. The particular victim in this case, in this child pornography, lives in the Southern District of Indiana. She was victimized as a result of an offender in Queens, New York, who communicated with Mr. Lewis for several months and they trafficked her material back and forth. Okay. Her material also from the New York offender went to another defendant in the Northern District of Indiana we prosecuted. So Mr. Lewis was the third person whose material was trafficked. I met with this victim and prepared her at various times and I can tell you she really does not want to hear any more uncertainty in what's going on in this case. And I can sit down and explain, it probably isn't going to change the point that he's going to get 45 years, but unless we're gaining something of severe value, judicial economy, victims rights, and finality, I think are more significant than wondering what we his waiver and given the likelihood he won't benefit from this ruling. All right. Thank you. Can I just ask one? Could I ask you to briefly address the status of the forfeiture question, Mr. DeBrona? Yes, Your Honor. The reason that the $196 wasn't returned was, if it came up at trial, it was our proof he could rent the hotel room he was going to take the kid to. But we contacted earlier this week, the FBI told me, the defendant's mother, we're going to send this stuff to her. He can't have a lot of this stuff in prison anyway. He can't have a lot of this stuff in prison anyway. So we're taking care of that issue. There's just some paperwork. How long do you expect that to take? I asked him to send the stuff that's not controversial three or four days ago. Okay, well, that's the kind of thing this court would want to know about as soon as possible. And we can file an update on that. We don't intend to keep any of it. When do you think you could file that update? Set a reasonable date. Two weeks. That's fine. I want the FBI to have the paper trail. And we're not returning any contraband, of course. We understand that. And so in terms of the $196, even though that's not contraband, would that go right to his prison account or you just return that to have everything clean and then it could... We were going to give it to his mother and if they don't want to do it that way... Let them work it out. Yeah, exactly. All right, thank you. Mr. Hillis, one minute. Thank you for the additional time. Let me begin with this idea of a Lewis waiver. A Lewis waiver would then, I guess, allow district court judges not to make any 3553A findings with respect to aspects of sentencing. We'd say that's okay because nobody objected. We're good with that. I don't think that we can have that. A judge is required to make the necessary determinations for all aspects of sentencing. Thompson says so with respect to supervised release. Giants says so. This is the case the government relies on. This is where they, in detail, go through the 3553A factors in respect to the length of the sentence and then say, have I addressed and make all the findings? And then say, have I addressed all your mitigation arguments? And they say, yes, that's a valid waiver. That's not what happened here. Lewis is not the test case for this type of waiver if you're going to base it on Giants because Giants made the findings. Lewis did not. And what risk does my client pose at 94 that he needs to be supervised in this fashion that all these conditions need to be imposed? As a practical matter, we should also consider that. But first and foremost, make the findings. They're not hard to make. And if it's not necessary to make them because the guys could be 94, don't impose them. Have a shorter period of supervised release. And when he comes out, if he's 100 years old, impose the conditions then. Yeah. And so in terms of making the findings, I don't think anyone is challenging that the court should make the findings. But once the court, if the court doesn't make a particular finding, that is required by law. You're not saying there can't be a waiver. That's correct. There could be a waiver so long as the findings are there. And then I've addressed all of your arguments. Yes, that's waived. But that didn't happen here. All right. Okay. Thank you. Thank you. We'll take the case under advisement.